SUSAN K. LEADER (SBN 216743)
KELLY A. HANDSCHUMACHER (314427)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
1999 Avenue of the Stars, Suite 600
Los Angeles, CA 90067-6022
Telephone:  310.229.1000
Facsimile:   310.229.1001
Email:        sleader@akingump.com
                   khandschumacher@akingump.com

ASHLEY VINSON CRAWFORD (SBN 257246)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
580 California Street, Suite 1500
San Francisco, CA 94104-1036
Telephone:  415.765.9500
Facsimile:   415.765.9501
Email:        avcrawford@akingump.com

Attorneys for Plaintiff
Tesoro Refining & Marketing Company LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TESORO REFINING & MARKETING COMPANY LLC, a Delaware limited liability company,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>SB GAS & WASH MANAGEMENT, INC., a California corporation; and AHMAD ABADI, an individual,<br><br>　　　　　　　Defendants. | Case No. 2:18-CV-04895-SVW-MAA<br><br>[Judge Stephen V. Wilson]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT**<br><br>[Declarations of John L. Castañeda, Sherrie L. Caudle, and Ashley Vinson Crawford; Memorandum of Points and Authorities Filed Concurrently]<br><br>Date: October 15, 2018<br>Time: 1:30 p.m.<br>Courtroom: 10A<br><br>Date Action Filed: June 1, 2018 |

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT

TO DEFENDANTS:

PLEASE TAKE NOTICE that on Monday October 15, 2018 at 1:30 p.m., or as soon thereafter as the Court allows, in Courtroom 10A, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Tesoro Refining & Marketing Company, LLC ("Plaintiff") will, and hereby does, move the Court to enter a default judgment against SB Gas & Wash Management, Inc. and Ahmad G.S. Abadi (collectively "Defendants") in this action.

In connection with this motion, Plaintiff presents proof of the following matters:

1. Defendants are not infants, incompetent persons, or in the military service (the latter meaning the Servicemembers Civil Relief Act does not apply).
2. Defendants have not filed responses to the Complaint (ECF 1) in this action.
3. None of the Defendants have appeared personally or by representative and, therefore, the Defendants are not entitled to notice of this motion under L.R. 55-1(e) and Fed. R. Civ. P. 55(b)(2).  Nonetheless, Plaintiff sent a letter dated August 23, 2018 to Defendants notifying them of Plaintiff's intention to seek default judgment against them and of the amount of damages Plaintiff will seek.
4. Plaintiffs are entitled to judgment against Defendants on all claims pleaded in the Complaint.
5. As set forth in the attached memorandum, Plaintiff seeks a judgment for contract damages, pre-judgment interest as calculated under the applicable contracts, attorneys' fees and costs, and post-judgment interest.

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of John L. Castañeda, Sherrie L. Caudle, and Ashley Vinson Crawford, all attached exhibits, all other pleadings and papers on record in this action, and upon such oral argument as may be made at the hearing.  The clerk has previously entered default against Defendants on August 20, 2018.  ECF 12.

There was no pre-filing conference pursuant to L.R. 7-3 because default was previously entered against Defendants, which Plaintiff notified Defendants of in a letter dated August 23, 2018, and Defendants have not answered or responded to the Complaint. Nor have Defendants contacted Plaintiff in response to the same letter dated August 23, 2018.

Dated:  September 26, 2018

**AKIN GUMP STRAUSS HAUER & FELD LLP**
SUSAN K. LEADER
ASHLEY VINSON CRAWFORD
KELLY A. HANDSCHUMACHER

By   /s/ *Ashley Vinson Crawford*
   Ashley Vinson Crawford
   Attorneys for Plaintiff
   Tesoro Refining & Marketing Company LLC

# TABLE OF CONTENTS

Page

I. INTRODUCTION .................................................................................................. 1

II. NATURE OF THE CASE ..................................................................................... 1

III. FACTUAL BACKGROUND ................................................................................ 2

IV. ALL PROCEDURAL REQUIREMENTS FOR A DEFAULT JUDGMENT HAVE BEEN MET. ............................................................................................. 4

V. A DEFAULT JUDGMENT IS REQUESTED IN THE AMOUNT OF $490,859.79. ........................................................................................................ 4

VI. THE *EITEL* FACTORS FAVOR ENTERING DEFAULT JUDGMENT ........... 5

    A. TRMC Would Suffer Prejudice In The Absence Of A Default Judgment. ................................................................................................... 6

    B. There Is Merit To Plaintiff's Substantive Claims And The Complaint Is Sufficient. ............................................................................ 6

        1. Count 1: Breach of Contract ............................................................ 7

        2. Count 2: Breach of Guaranty ........................................................... 8

    C. The Amount Of Money At Stake Is Appropriate. ..................................... 8

    D. There Is No Reasonable Possibility Of A Dispute Over Material Facts. ............................................................................................................ 9

    E. Defendants' Default Is Not Due To Excusable Neglect. .......................... 9

    F. The Policy Favoring Decisions On The Merits Is Not An Obstacle ...................................................................................................... 9

VII. CONCLUSION .................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amini Innovation Corp. v. KTY Int'l Mktg.*,
   768 F. Supp. 2d 1049 (C.D. Cal. 2011) .................................................................. 6

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) ................................................................. 5, 6, 10

*Indymac Bank, F.S.B v. Aryana/Olive Grove Land Dev., LLC*,
   2013 WL 12129624 (C.D. Cal. Sept. 4, 2013) .................................................. 8

*Kloepping v. Fireman's Fund*,
   No. C 94-2684 TEC, 1996 WL 75314 (N.D. Cal. Feb. 13, 1996) ................. 7

*Landstar Ranger, Inc. v. Parth Enters., Inc.*,
   725 F. Supp. 2d 916 (C.D. Cal. 2010) ................................................. 7, 8, 10

*Nielson v. Synergy Holdings, LLC*,
   2016 WL 715769 (C.D. Cal. Feb. 22, 2016) ............................................. 8, 10

*PepsiCo, Inc. v. Cal. Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) .................................................. 4, 6, 9

*Philip Morris USA Inc. v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) ............................................................... 6, 9

*TeleVideo Sys, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987) ........................................................................ 7, 9

**Statutes**

28 U.S.C. § 1961(a) ........................................................................................... 5

50 U.S.C. App. § 521 ........................................................................................ 4

**Other Authorities**

Fed. R. Civ. P. 6(a)(1) ....................................................................................... 1

Fed. R. Civ. P. 55(b) ................................................................................. 1, 4, 9

Los Angeles Superior Court L.R. 55 ............................................................ 4, 5

## I. INTRODUCTION

On June 1, 2018, Tesoro Refining & Marketing Company, LLC ("TRMC" or "Plaintiff") filed its Complaint for Breach of Contract and Breach of Guaranty (ECF 1) against SB Gas & Wash Management, Inc. and Ahmad G.S. Abadi (collectively "Defendants"). On July 14, 2018, Defendants were served with a summons and a copy of the Complaint by personal service upon Mr. Abadi on behalf of himself and on behalf of SB Gas & Wash Management, Inc. as its president, who is authorized to accept service on behalf of SB Gas & Wash Management, Inc. ECF 8, 9. Defendants did not file a responsive pleading or otherwise defend the suit within 21 days of being served with the summons and complaint, as computed under Fed. R. Civ. P. 6(a)(1). ECF 11 at 1-2.

On August 20, 2018, the Clerk entered default against Defendants. ECF 12.

Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, Plaintiff now moves the Court for entry of a default judgment against Defendants in the amount of $490,859.79 (consisting of $424,075.90 in contract damages plus $53,237.62 of prejudgment interest and $13,546.27 in costs and attorney fees), as well as an award of post-judgment interest on the default judgment amount. The Declaration of John L. Castañeda ("Castañeda Decl."), the Declaration of Sherrie L. Caudle ("Caudle Decl."), and the Declaration of Ashley Vinson Crawford ("Crawford Decl.") are submitted in support of this motion.

## II. NATURE OF THE CASE

Defendant SB Gas & Wash Management, Inc. ("SB Gas") operated a Shell-branded gasoline station located at 2160 South Euclid Avenue, Ontario, California (the "Station"), pursuant to a ten-year supply agreement with TRMC, which commenced in 2013. ECF 1 ¶ 1. Defendant Ahmad G.S. Abadi ("Mr. Abadi," or the "Guarantor") personally guaranteed all of SB Gas's debts and obligations to TRMC. *Id*.

Spirit SPE Portfolio CA-C Stores, LLC ("Spirit") leased the property to SB Gas on which it operated the Station. ECF 1 ¶ 2. In January 2017, Spirit filed several

1
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT

unlawful detainer lawsuits in California seeking to evict SB Gas from the Station and a number of other gas station locations it leased from Spirit. *Id*. In March 2017, SB Gas entered into stipulated judgments in the eviction lawsuits, pursuant to which SB Gas was evicted from the Station. *Id*. In April 2017, SB Gas stopped purchasing gasoline from Plaintiff for the Station. *Id*. Thereafter, another operator began selling non-branded gasoline at the Station. *Id*.

TRMC invested significant amounts of money and other resources in reliance on, among other things, the commitment by SB Gas and its Guarantor to sell gasoline supplied by TRMC at the Station for the duration of the ten-year term. ECF 1 ¶ 3. TRMC brought this action for damages caused by SB Gas's breaches of the parties' agreements. *Id*.

## III. FACTUAL BACKGROUND

On October 1, 2013, TRMC entered a Retail Sales Agreement ("RSA") with Team West Enterprises, Inc. ("Team West") for the sale of a minimum quantity of 15,000,000 gallons of diesel and Shell-branded gasoline to the Station over a ten-year term commencing on October 1, 2013. ECF 1 ¶ 10, ECF 1-1. Also on October 1, 2013, TRMC and Team West entered into a Retailer Loan Agreement ("RLA") whereby TRMC loaned Team West $125,000 on the condition that Team West install Shell branding at the Station. ECF 1 ¶ 11, ECF 1-2.

The RSA includes a liquidated damages provision, which obligates the Retailer (then Team West) to pay TRMC a pre-determined amount in the event of termination prior to the purchase of the 15,000,000 gallon Minimum Quantity specified in the RSA, calculated by multiplying $.025 per gallon by the difference between the 15,000,000 gallon Minimum Quantity and the gallons actually purchased during the RSA term. ECF 1 ¶ 12, ECF 1-1 at 8. The RSA also provides that "[t]he prevailing party will be entitled to recover from the other party reasonable attorneys' fees and other legal costs the party incurs in order to secure, defend or protect the rights inuring to the prevailing

party under this Agreement, or to enforce the terms thereof." ECF 1 ¶ 13, ECF 1-1 at 25.

The RLA states that an "Event of Default" includes when a "Seller terminates the RSA in compliance with the Federal Petroleum Marketing Practices Act." ECF 1 ¶ 14, ECF 1-2 at 7. It further provides:

> Upon the occurrence of any Event of Default [TRMC] shall have . . . the right to terminate [the RLA], effective in Seller's sole discretion on or at anytime after the date of the Event of Default, in which case the unamortized, unforgiven portion of the Retailer Loan, and all accrued interest thereon . . . and any other amounts owed by Retailer to Seller under this Agreement, the RSA . . . or any other agreement, instrument, note, or contract between Seller and Retailer, shall become immediately due and payable . . . to Seller. Interest shall accrue on all such amounts at the rate of twelve percent (12%) per annum, compounded monthly, or at the highest lawful rate of interest authorized under California state law, whichever amount is lower, accruing from the date Seller terminates this Agreement until paid in full.

ECF 1 ¶ 14, ECF 1-2 at 6-7.

On or about August 21, 2014, SB Gas executed an Assignment and Assumption of Retailer Agreements and a Loan Assignment and Assumption Agreement with TRMC and Team West, pursuant to which SB Gas assumed the rights and obligations of Team West under the RSA, the RLA, and other specified agreements between TRMC and Team West. ECF 1 ¶ 15, ECF 1-3, 1-4. Also on or about August 21, 2014, Mr. Abadi executed a Continuing Guaranty that guaranteed "the full payment and performance, when due, of all Obligations" of SB Gas to TRMC. ECF 1 ¶ 16, ECF 1-5 at 2. The Continuing Guaranty also provided that "Guarantor agrees to pay all costs and expenses, including, without limitation, reasonable attorneys' fees and disbursements which are incurred by [TRMC] in enforcement of this Guaranty." ECF 1 ¶ 16, ECF 1-5 at 6.

In March 2017, SB Gas entered into a stipulated judgment with Spirit pursuant to which SB Gas was evicted from the Station. ECF 1 ¶ 17. In April 2017, SB Gas stopped purchasing gasoline from TRMC for the Station. *Id*. ¶ 18. Prior to this date, only 3,036,964 gallons of diesel and Shell-branded gasoline were purchased during the

RSA term. *Id*. ¶ 19; Exhibit 1 to Castañeda Decl. On or about June 13, 2017, TRMC sent a Notice of Termination to SB Gas terminating the RSA and the franchise relationship effective immediately. ECF 1 ¶ 20; Exhibit 1 to Caudle Decl. On information and belief, thereafter, another operator began selling non-branded gasoline at the Station. ECF 1 ¶ 21. Neither SB Gas nor anyone else operating the Station has purchased gasoline from TRMC to supply the Station since, at the latest, April 3, 2017. ECF 1 ¶ 22. SB Gas has not repaid TRMC any amounts due under the RSA or the Retailer Loan Agreement. ECF 1 ¶ 23.

### IV.   ALL PROCEDURAL REQUIREMENTS FOR A DEFAULT JUDGMENT HAVE BEEN MET.

The Clerk has entered default against each Defendant. Pursuant to Local Rule 55-1, the Declarations of Ashley Vinson Crawford and Sherrie L. Caudle submitted herewith collectively state: (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) that each Defendant is not an infant or incompetent person; (4) that the Servicemember's Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) that Plaintiff has provided notice to Defendants of its plan to file a motion for default judgment even though neither Defendant has appeared within the meaning of Fed. R. Civ. P. 55(b)(2). Crawford Decl. ¶¶ 2-8; Caudle Decl. ¶ 3. With these procedural requirements met, Federal Rule of Civil Procedure 55(b)(2) and the Local Rules authorize the Court to enter default judgment against each Defendant. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002).

### V.   A DEFAULT JUDGMENT IS REQUESTED IN THE AMOUNT OF $490,859.79.

The total amount sought in the proposed default judgment is $490,859.79. This amount consists of the contract damages under the RLA and RSA, the prejudgment interest on those damages, and the costs and attorney fees for this action. The damages

under the RSA are $299,075.90 and under the RLA are $125,000. Exhibit 1 to Castañeda Decl.; Castañeda Decl. ¶ 2.

Prejudgment interest on the RSA damages, calculated at 10% per annum from the date of the event triggering SB Gas's indebtedness to TRMC, which is when TRMC terminated the contract for cause on June 13, 2017 in compliance with the Federal Petroleum Marketing Practices Act (Exhibit 1 to Caudle Decl.), totals $37,384.49 as of September 13, 2018 (15 months after the date triggering SB Gas's indebtedness). Prejudgment interest on the RLA damages, calculated at 12% per annum, compounded monthly, from the date of the event of default, which is the date that TRMC terminated the RLA on June 13, 2017 (Exhibit 2 to Caudle Decl.), totals $15,853.13 as of September 13, 2018 (15 months after the event of default).

Under the attorneys' fees schedule in Local Rule 55-3, attorneys' fees for judgments over $100,000 shall be calculated as $5,600 plus 2% of the judgment amount (excluding costs) over $100,000. Here, the judgment amount exclusive of costs is $477,313.52. Thus, under the schedule, attorneys' fees here are $13,146.27.

In addition to attorneys' fees, damages, and interest, TRMC seeks $400 for its cost of filing the complaint in this action. *See* Crawford Decl. ¶ 9; Exhibit 3 to Crawford Decl.

Pursuant to 28 U.S.C. § 1961(a), TRMC seeks an award of post-judgment interest on the final judgment amount of $490,859.79 at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of this judgment.

## VI.    THE *EITEL* FACTORS FAVOR ENTERING DEFAULT JUDGMENT

Once a plaintiff complies with the procedural requirements, the Court may enter default judgment consistent with the factors set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986). Specifically, the *Eitel* factors are "(1) the possibility of prejudice to the plaintiff; (2) the merit of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute

5
PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT

concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471-72.  Importantly, "default judgments are more often granted than denied." *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (citation omitted).  As detailed below, the weight of these factors strongly favors entry of default judgment.

### A. TRMC Would Suffer Prejudice In The Absence Of A Default Judgment.

The first *Eitel* factor is whether failure to grant a default judgment would result in prejudice to the plaintiff.  *Eitel*, 782 F.2d at 1471.  Here, if default judgment is not entered, TRMC will be left with no other recourse for recovery against the Defendants, who refuse to respond to the Complaint.  *See Castworld Prods., Inc.*, 219 F.R.D. at 499.  Defendants have failed to respond to the properly served complaint and the letter sent by TRMC's counsel.  Crawford Decl. ¶¶ 2-6.  Defendants also failed to respond to TRMC's Notice of Termination letter dated June 13, 2017, which informed them of the amounts owed to TRMC upon termination of the RSA and related agreements.  Castañeda Decl. ¶ 3; Exhibit 1 to Caudle Decl.  Accordingly, "a default judgment is the only means available for compensating Plaintiff for Defendants' violations." *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011).

Defendants' breach of their contracts with TRMC has directly, proximately, and foreseeably caused TRMC to suffer damages.  Failure to enter default judgment would sanction Defendants' disregard for the parties' contracts, as well as condone their unwillingness to resolve the matter through the judicial process.  "If the Court does not enter a default judgment, it will allow Defendant[s] to avoid liability by not responding to Plaintiff's claims." *Amini Innovation*, 768 F. Supp. 2d at 1054.

### B. There Is Merit To Plaintiff's Substantive Claims And The Complaint Is Sufficient.

Courts then consider the second and third *Eitel* factors, which assess the substantive merit of a plaintiff's claim and the sufficiency of its pleadings.  *PepsiCo*,

238 F. Supp. 2d at 1175; *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010). The Ninth Circuit has suggested that these two factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Kloepping v. Fireman's Fund,* No. C 94-2684 TEC, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996) (citing *Danning v. Lavine,* 572 F.2d 1386, 1388 (9th Cir. 1978)). Courts accept well-pleaded allegations regarding liability as true. *TeleVideo Sys, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). TRMC's well-pled complaint has satisfied these two factors, and to support this, each cause of action is addressed in turn.

### 1. Count 1: Breach of Contract

The elements of a claim for breach of contract are "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage to the plaintiff as a result of defendant's breach." *Landstar*, 725 F. Supp. 2d at 920.

Here, TRMC and SB Gas are parties to valid and enforceable contracts – the RSA and the RLA. ECF 1 ¶¶ 15, 25. TRMC has performed all of its obligations under the RSA and the RLA, and/or its performance was excused by SB Gas's unilateral, unauthorized termination of the parties' agreements. *Id.* ¶ 26. SB Gas materially breached the RSA by discontinuing the sale of Shell-branded gasoline at the Station, and by failing to continue purchasing gasoline from Plaintiff to supply the Station. *Id.* ¶ 27. SB Gas's breach constitutes an "Event of Default" under the RSA, and TRMC sent a notice of termination of the RSA and the franchise relationship to SB Gas on or about June 13, 2017. *Id.* ¶ 28. SB Gas's breach obligates SB Gas to pay TRMC liquidated damages of $.025 per gallon for the difference between the 15,000,000 gallon Minimum Quantity specified in the RSA and the 3,036,964 gallons of diesel and Shell-branded gasoline purchased under the RSA. *Id.* ¶ 29. SB Gas has not paid any portion of the liquidated damages owed under the RSA. *Id.* SB Gas's default under the RSA also obligates SB Gas to reimburse the $125,000 loan plus interest as specified in the RLA. *Id.* ¶ 30. SB Gas has not reimbursed any portion of the loan or interest owed thereon.

*Id.* As a direct, proximate and foreseeable result of SB Gas's breaches, TRMC has suffered damages. *Id.* ¶ 31.

Thus, TRMC has stated a meritorious claim for breach of contract against SB Gas. TRMC is entitled to default judgment. *Landstar*, 725 F. Supp. 2d at 921 (entering default judgment on breach of contract action).

### 2. Count 2: Breach of Guaranty

The elements of a claim for breach of guaranty are: 1) the existence of a valid guaranty; 2) default by the borrower; and 3) failure of the guarantor to perform under the guaranty. *Indymac Bank, F.S.B v. Aryana/Olive Grove Land Dev., LLC*, 2013 WL 12129624, at *6 (C.D. Cal. Sept. 4, 2013) (citing *Grayl CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 486 (2011) and *Torrey Pines Bank v. Superior Court*, 216 Cal. App. 3d 813, 819 (1989)), *aff'd*, 636 F. App'x 704 (9th Cir. 2016).

TRMC and Mr. Abadi are parties to a valid and enforceable guaranty agreement (the "Continuing Guaranty"). ECF 1 ¶¶ 16, 33. In the Continuing Guaranty, Mr. Abadi personally and unconditionally guaranteed full payment and performance, when due, of all debts and obligations of SB Gas to TRMC. The Continuing Guaranty also provides that Mr. Abadi agrees to pay any attorneys' fees, costs, and expenses associated with any action by TRMC to enforce the Continuing Guaranty. *Id.* ¶ 34. Neither SB Gas nor Mr. Abadi has paid any of the amounts that SB Gas owes to TRMC that are sought in this action. *Id.* ¶ 36. Thus, Mr. Abadi has breached the Continuing Guaranty because he has not paid SB Gas's unpaid debt to TRMC. *Id.* ¶ 37.

### C. The Amount Of Money At Stake Is Appropriate.

"The amount at stake must not be disproportionate to the harm alleged." *Nielson v. Synergy Holdings, LLC*, 2016 WL 715769, at *3 (C.D. Cal. Feb. 22, 2016). Apart from prejudgment interest, TRMC now seeks $424,075.90 in contract damages listed in the Complaint that was served on Defendants. That amount is appropriate in light of the Defendants' obligations under the RSA, RLA, and Continuing Guaranty. Prejudgment interest of $53,237.62 for 1.25 years calculated at 10% per year on the RSA contract

damages and 12% per year compounding monthly on the RLA damages is also appropriate, especially given that these prejudgment interest rates are calculated pursuant to the RLA and RSA, and that Defendants refused to compensate TRMC when TRMC notified Defendants of the amounts owed in a letter dated June 13, 2017 (Exhibit 1 to Caudle Decl.).

### D. There Is No Reasonable Possibility Of A Dispute Over Material Facts.

When a plaintiff has filed a well-pleaded complaint, there is little to no possibility of a dispute concerning material facts. *Castworld Prods., Inc.*, 219 F.R.D. at 500; *TeleVideo*, 826 F.2d at 917-18. Here, TRMC filed a well-pleaded and detailed complaint, yet the Defendants defaulted by failing to appear. Thus, "the likelihood that any genuine issue may exist is, at best, remote." *Castworld Prods., Inc.*, 219 F.R.D. at 500.

### E. Defendants' Default Is Not Due To Excusable Neglect.

The Defendants were served and received notice of their default and Plaintiff's intent to file a motion for default judgment. ECF 8, 9; Exhibit 1 to Crawford Decl. Moreover, Defendants were informed in a Notice of Termination letter dated June 13, 2017 of the amounts they owed to TRMC upon termination of the RSA and related agreements, but Defendants did not respond to TRMC's letter. Castañeda Decl. ¶ 3; Exhibit 1 to Caudle Decl. In cases such as this where the "Defendants failed to answer the complaint" and have ignored "multiple notices" regarding this lawsuit, their default "did not result from excusable neglect, but rather from willful disobedience." *Castworld Prods., Inc.*, 219 F.R.D. at 501.

### F. The Policy Favoring Decisions On The Merits Is Not An Obstacle

Although public policy favors a decision on the merits, the existence of Rule 55(b) presupposes that in some instances a decision on the merits is not possible or practical. *PepsiCo*, 238 F. Supp. 2d at 1177. Indeed, a defendant's failure to answer a complaint makes a decision on the merits impractical, if not impossible. *Castworld Prods., Inc.*, 219 F.R.D. at 501. Similarly, courts favor entry of default judgment when

the defendant has been properly served or was aware of the suit.  *Landstar*, 725 F. Supp. 2d at 922.

Where, as here, a defendant was properly served and has failed to appear, the policy in favor of decisions on the merits is outweighed by the impracticality posed by the defendant's absence and the final *Eitel* factor does not preclude a default judgment.  *Nielson*, 2016 WL 715769, at *4.

\* \* \*

In sum, every *Eitel* factor weights in favor of granting the motion for default judgment.  Thus, the Court should enter a default judgment against Defendants.

## VII.   CONCLUSION

For the foregoing reasons, TRMC respectfully requests that the Court:

1. Enter Default Judgment finding Defendants liable on all counts in the Complaint in this action;
2. Enter a monetary award in the amount of $490,859.79 which includes $424,075.90 in contractual damages, $53,237.62 in prejudgment interest, and $13,546.27 in costs and attorney fees; and
3. Enter an award of post-judgment interest.

Dated:  September 26, 2018

**AKIN GUMP STRAUSS HAUER & FELD LLP**
SUSAN K. LEADER
ASHLEY VINSON CRAWFORD
KELLY A. HANDSCHUMACHER

By  /s/ *Ashley Vinson Crawford*
Ashley Vinson Crawford
Attorneys for Plaintiff
Tesoro Refining & Marketing Company LLC

CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1999 Avenue of the Stars, Suite 600, Los Angeles, CA 90067-6022. On September 26, 2018, I served the foregoing document(s) described as:

1. **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ENTRY OF DEFAULT JUDGMENT;**

2. **[PROPOSED] DEFAULT JUDGMENT;**

3. **PROPOSED] ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT;**

4. **DECLARATION OF ASHLEY VINSON CRAWFORD IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT;**

5. **DECLARATION OF JOHN L. CASTANEDA IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT; and**

6. **DECLARATION OF SHERRIE L. CAUDLE IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT**

on the interested party(ies) below, using the following means:

Ahmad Abadi
151 N. Thurston Ave.
Los Angeles, CA 90049

SB Gas & Wash Management, Inc.
151 N. Thurston Ave.
Los Angeles, CA 90049

☐ BY UNITED STATES MAIL. I enclosed the documents in a sealed envelope or package addressed to the respective address(es) of the party(ies) stated above and placed the envelope(s) for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at Los Angeles, California.

☒ BY OVERNIGHT DELIVERY. I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the respective address(es) of the party(ies) stated above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

1
CERTIFICATE OF SERVICE

1 ☐ BY ELECTRONIC MAIL OR ELECTRONIC TRANSMISSION. Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the respective e-mail address(es) of the party(ies) as stated above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on September 26, 2018 at Los Angeles, California.

Rebecca McNew
[Print Name of Person Executing Proof]

[Signature]